ARTHUR M. LOEB, Respondent, *v.* THE STAR & HERALD COMPANY, INC., Appellant.

First Department, April 4, 1919.

Corporations — action for libel against foreign corporation — jurisdiction — doing business within State — property within State — service of process upon managing agent — evidence.

In an action for libel by a resident of this State against a foreign corporation publishing a newspaper in the city of Panama, evidence *held*, insufficient to establish that the defendant was doing business within this State, or that it had property within the State, or that service was made upon its managing agent.

Neither the declarations of an alleged managing agent of a corporation
nor those of any other person in the office with regard to his authority to
represent said corporation are binding upon it or have any probative force
on the issue with respect to his agency.

A managing agent, within the meaning of subdivision 3 of section 432 of
the Code of Civil Procedure, must be some person invested by the corpora-
tion with general powers involving the exercise of judgment and discretion,
as distinguished from an ordinary agent or attorney who acts in an inferior
capacity and under the direction and control of superior authority, both
in regard to the extent of his duty and the manner of executing it.

MERRELL, J., dissented, with opinion; PAGE, J., dissented in part, with
memorandum.

APPEAL by the defendant, The Star & Herald Company,
Inc., from an order of the Supreme Court, made at the New
York Special Term and entered in the office of the clerk of
the county of New York on the 6th day of November, 1918,
denying its motion to set aside the service of the summons
and complaint herein.

*Philip L. Miller* of counsel [*Hjalmar H. Boyesen* with him
on the brief; *Sullivan & Cromwell*, attorneys], for the appellant.

*Alexander A. Mayper* of counsel [*Isidor Bayer* with him
on the brief; *Mayper & Boochever*, attorneys], for the
respondent.

LAUGHLIN, J.:

I am of opinion that George T. Green, upon whom the
summons and complaint were served, was not a managing
agent of the defendant within the provisions of section 432,
subdivision 3, of the Code of Civil Procedure, quoted in the
opinion of Mr. Justice MERRELL.

The libel was published and the cause of action arose in
Panama where the defendant was incorporated and conducted
the business of publishing two newspapers, one in the English
language and one in Spanish. It did no business here excepting
that through one Carlos R. Duque. It solicited and took
advertising here to be published in its newspapers in Panama
and paid him commissions therefor which were deducted from
the payments made. Duque also conducted a commission
business of moderate proportions and he owned and managed
the University Garage here and for those purposes he main-
tained an office at 17 Battery place in the city of New York,

where the service was made, and there employed said Green as his private secretary. It appears that Duque had other business which he conducted in Panama and that he was there a large part of the time and had not been in the New York office for about a year prior to the day of the service. In his absence it was his custom to leave with or send to said Green a schedule of advertising rates and to direct him to take orders and collect for advertising space according to such rates and to deduct commissions and remit the surplus to the company, and during the absence of Duque, Green also conducted his other commission business and managed the garage. Green was paid by Duque personally and had no connection with the defendant other than as herein stated.

It is stated in the affidavit of the process server that she knew Green to be the managing agent of the defendant and it is stated in an affidavit made by the wife of the plaintiff, who obtained an interview with Green with a view to obtaining information for the purpose of serving the summons, that Green was in charge of the business of the defendant in the city of New York and that the defendant had property here; but these are merely conclusions of the affiants and are of no avail unless supported by the facts properly set forth. (*Taylor* v. *Granite State Provident Assn.*, 136 N. Y. 343; *Moore* v. *Monumental Mutual Life Ins. Co.*, 77 App. Div. 209.) The only other statements in the affidavits upon which it is sought to sustain these conclusions are a general statement in the affidavit of the process server to the effect that the service was made in the office of the company and that Green informed her that he was in full charge of its business and was its manager and that there was no officer or director of the company in this State, and that she noticed stationery of the company and two cases three feet by three feet in dimensions addressed to it in the office and its name on the office entrance door, and statements in the affidavit of the plaintiff's wife to the effect that she went to the office of the company on the pretext of placing an order for advertising and asked for Duque and was informed that he was in Panama, but that said Green was in charge of defendant's business, and that on calling on Green there the next day, he informed

First Department, April, 1919.    [Vol. 187.

her that he was the manager and in full charge of defendant's business and could furnish rates and make all necessary arrangements and take advertising for the paper and that he verbally made her a quotation of advertising rates and stated that he would send bills for the advertising monthly, and that remittances therefor should be made at that office; and she says that at her request he wrote a letter, on stationery in the name of the company, addressed to a company she assumed to represent, specifying the rates for advertising and signed the same, " The Star and Herald Company, per G. T. Green," and that she noticed the name of the defendant on the entrance door to the office and noticed other stationery consisting of letterheads and envelopes with the name of the defendant printed thereon and two small wooden cases partly open, marked in ink, " Star and Herald Company." Green denied that he stated to the process server or to the plaintiff's wife that he was the manager of the defendant, and says that he had " no voice of any kind whatsoever in any of the affairs of said company," and that he had no authority excepting that derived from his employer Duque, which was to quote rates for advertising and to collect the cost of such advertising and remit the surplus after deducting his employer's commissions, and that the office at No. 17 Battery place, where the service was made, was the office of his employer, Duque, and that the sign at the entrance thereto in large type on the transom was " Carlos R. Duque," and in smaller type on the glass face of the entrance door, " The Star and Herald Company, Panama." Neither the declarations of Green nor those of any other person in the office with regard to his authority to represent the defendant are binding upon it or have any probative force on the issue with respect to his agency. (*Vitolo* v. *Bee Publishing Co.*, 66 App. Div. 582; *Coler* v. *Pittsburgh Bridge Co.*, 146 N. Y. 281.)

There is no evidence with respect to the amount of advertising thus obtained by the defendant here or as to whether advertising orders were obtained only occasionally or so frequently that it might be said that there was a continuity of business. So far as appeared there was no business of the company to be managed here. The only employee of the company here in any view of the evidence was Duque, and the

fair inference is that in connection with his other business he was taking advertising orders for the defendant on a commission basis so that the business he was conducting was his own and not that of the defendant.

The observations made in some opinions to the effect that service which renders it reasonably probable that the party proceeded against will receive a process in time to defend (See *Hiller* v. *B. & M. R. R. R. Co.*, 70 N. Y. 223; *Palmer* v. *Pennsylvania Co.*, 35 Hun, 369; affd., 99 N. Y. 679; *Rochester, Hornellsville & L. R. R. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 48 Hun, 190; *Barrett* v. *A. T. & T. Co.*, 138 N. Y. 491; *Pope* v. *Terre Haute Car Mfg. Co.*, 87 id. 137), must be read in connection with the express requirements of provisions of the Code of Civil Procedure that the person upon whom the service is made must be a managing agent of the company, and in the light of the rule stated in *Taylor* v. *Granite State Provident Assn. (supra)* that such a managing agent "must be some person invested by the corporation with general powers involving the exercise of judgment and discretion, as distinguished from an ordinary agent or attorney, who acts in an inferior capacity and under the direction and control of superior authority, both in regard to the extent of his duty and the manner of executing it." (See, to the same effect, *Coler* v. *Pittsburgh Bridge Co., supra.*) If the fact that the process eventually reached the defendant were a controlling factor, service could seldom be set aside, for the motion in all cases must be made by defendant. If there were any evidence that the defendant authorized Green to act as its managing agent within the State it would doubtless be immaterial whether it compensated him for his services or whether he was paid therefor by another (*Palmer* v. *Pennsylvania Co., supra*); but here there is no evidence that it authorized Green to act as its agent and the evidence shows that the services he performed were under his employment by, and were for, Duque.

That he assumed to act as agent for the defendant is not sufficient. He must have been authorized by it so to act. (*Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259, 268, 269.) Here there is not even evidence of ratification, for it was not shown that he corresponded with the company in his own name; and the fair inference is that since he was acting as

the private secretary of Duque, his correspondence was with him or with the company in his name. In *Tauza* v. *Susquehanna Coal Co.* (*supra*) the defendant maintained an office in charge of a sales agent with a number of salesmen and clerical assistants under him and through these agencies systematically and regularly solicited and obtained orders which resulted in continuous shipments of coal into the State. This was held to be sufficient to show doing business within the State to enable our courts to acquire jurisdiction over the defendant, which was a foreign corporation, and to sustain service on the sales agent on the theory that he was a managing agent. The facts of this case fall far short of bringing it within that decision upon either point and leave it, I think, fairly within the rule declared by this court on quite similar facts in *Vitolo* v. *Bee Publishing Co.* (*supra*) which was followed in *Moore* v. *Monumental Mutual Life Ins. Co.* (*supra*); in *Fontana* v. *Post Printing & Publishing Co.* (87 App. Div. 233), and in *Beck* v. *North Packing & Provision Co.* (159 id. 418), none of which, I think, can be said to have been overruled on this point by *Tauza* v. *Susquehanna Coal Co.* (*supra*).

Moreover, I think, it was not sufficiently shown that the defendant had property within this State to authorize the court to take jurisdiction of the action. That provision of the Code, which is a condition precedent to acquiring jurisdiction, has been held to contemplate the existence here of property of a substantial nature from which a recovery might, in part at least, be satisfied. (*Barnes* v. *Mobile & North Western R. R. Co.*, 12 Hun, 126; *Reddington* v. *Mariposa L. & M. Co.*, 19 id. 409; *Tuchband* v. *Chicago & Alton R. R. Co.*, 16 Civ. Proc. Rep. 241.)

I am of opinion, therefore, that it has not been shown that the defendant was doing business within the State (See *Grant* v. *Cananea Consol. Copper Co.*, 189 N. Y. 241, and authorities therein cited), or that it had property within the State or that the service was made upon a managing agent of the defendant. This case on the last point I think falls within the rule stated in *Coler* v. *Pittsburgh Coal Co.* (*supra*) as follows: " In the absence, therefore, of proof with respect to what the relation actually is to the foreign corporation

of the person, to whom the summons is delivered in this State, it is the wiser and better rule to adopt that the right to maintain the action has not been acquired."

The order should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

CLARKE, P. J., and SHEARN, J., concurred; MERRELL, J., dissented.

PAGE, J.:

I concur in the result of the opinion of Mr. Justice LAUGHLIN on the ground that it does not sufficiently appear that the defendant has property within this State, which would be necessary to confer jurisdiction on the court, as the cause arose without the State. I agree with Mr. Justice MERRELL that the person served was a managing agent within section 432 of the Code of Civil Procedure.

MERRELL, J. (dissenting):

The defendant, appellant, is a foreign corporation, publishing, in the city of Panama, a newspaper in the Spanish language, known as *La Estrella de Panama*. The plaintiff is a resident of and domiciled in the city of New York. The action is to recover damages for an alleged libelous article appearing in said newspaper, published in May, 1918, while the plaintiff was in the said city of Panama. In said article, plaintiff alleges that the defendant published false and malicious statements charging the plaintiff with having purchased stolen goods in the canal zone, knowing the same to have been stolen.

The question involved on this appeal is as to whether or not there was a sufficient service of the summons in this action upon the defendant. The service was made upon one George T. Green, whom the plaintiff alleges was the managing agent conducting defendant's business in the city of New York. It sufficiently appears from the affidavits that the defendant is a foreign corporation, and that neither the president, vice-president, treasurer, assistant treasurer, secretary nor assistant secretary nor other officer performing corresponding functions of either of such officers was within the State of New York at the time service was attempted, and that

no person had been designated for the purpose of receiving service, as provided by section 16 of the General Corporation Law (Consol. Laws, chap. 23; Laws of 1909, chap. 28). It is claimed, moreover, not only that at the time of service the corporation had property within the State of New York, but that the person so served with the summons and complaint herein was at the time the "managing agent of the corporation" within the State of New York, and was the proper person upon whom to serve said summons and complaint under subdivision 3 of section 432 of the Code of Civil Procedure. Said subdivision provides as follows:

"3. If such a designation is not in force [referring to the designation of a person upon whom process may be served, as provided in section 16 of the General Corporation Law], or if neither the person designated, nor an officer specified in subdivision first of this section [the president and other officers hereinbefore mentioned], can be found with due diligence, and the corporation has property within the State, or the cause of action arose therein; to the cashier, a director, or a managing agent of the corporation, within the State."

To sustain plaintiff's claim that the man Green, upon whom service was made, was a managing agent within the provisions of the subdivision above quoted and, therefore, a proper person upon whom service could be made, and in opposition to defendant's motion to set aside such service, the plaintiff shows, by affidavit, that the service was made by one Katherine Alexander on September 27, 1918, at 17 Battery place in the office of the defendant in the borough of Manhattan, New York city, by delivering a copy of said papers to one G. T. Green, defendant's managing agent. It appears from the affidavits in opposition to defendant's motion to set aside such service that the person who made the service was the head of a process serving concern and on the day in question went to the building and entered the office of the defendant therein, over the entrance of which appeared the name or sign of the defendant corporation. The process server asked the young lady in charge of the office for a Mr. Duque, whose name also appeared upon the door of the office. It is admitted that the father of Duque, then deceased, at his death was the owner of a majority of the stock of the

defendant corporation. The young lady in charge of the office, in response to the process server's inquiry for Mr. Duque, replied that he was not in the city, and that Mr. Green was in full charge of the business. Shortly thereafter and on the day when the process was served, the process server again visited the defendant's office and there met a gentleman who said that he was Mr. Green and that he was in charge of the business. The process server swears that Green told her that he was not an officer, but was only the manager of the company. Thereupon the summons and complaint was served upon him. It also appears from an affidavit of plaintiff's wife that she, sometime prior to the service of process herein, volunteered to ascertain the proper person upon whom to make such service, and visited the office of the defendant at 17 Battery place, borough of Manhattan, New York city, and there had a conversation with the young lady in charge of the office, who also told her that Mr. Duque was in Panama, and that Mr. Green was in charge of the business of the defendant company in his absence; that she visited the office on a second occasion and met Mr. Green, who told her that Mr. Duque was in Panama and had been there for a long time and was not expected back for some time and that he, Green, was the manager in full charge of the business of the defendant, The Star & Herald Co., Inc., and would take any advertising for the paper and could furnish rates and make all necessary arrangements. Mr. Green also stated that bills would be sent monthly, and that payments should be made at the New York office. Following this conversation, at the affiant's request, Green prepared a letter reducing a part of such representations to writing and delivered the same to Mrs. Loeb, and said letter is attached to and forms a part of said affidavit. While in this letter the advertising manager of the defendant company is stated to be Carlos R. Duque, the letter is signed by the defendant company, " per G. T. Green," the name, G. T. Green, being written in ink.

It appeared from the affidavits of the process server and of Mrs. Loeb that at the time of their visits to the defendant's office they observed letterheads and envelopes there bearing defendant's name and that there were also in defend-

ant's said office two wooden cases about three by three feet in size addressed to the defendant company at its said office at 17 Battery place, New York city.

The only affidavits submitted in support of the motion to set aside the service of the summons and complaint were made by the said George T. Green, the alleged business manager of the defendant. Green denies that he occupied the position of business manager, but it does appear from his affidavits and also from the brief of the appellant herein that the defendant corporation maintained an office at 17 Battery place, in the borough of Manhattan, city of New York. It is claimed by Green that on the transom appeared in large letters the name of Carlos R. Duque, and that there also appeared thereon, but in smaller type, the name of the defendant corporation. Green admits in his affidavit that the defendant carries on the business of soliciting advertising matter for its newspapers at said place of business, and that all orders for advertising space are taken at that place. While disclaiming that he has any business connection with the defendant, Green admits that the father of Carlos R. Duque was the owner of most of the appellant's stock; that the father is dead and it is claimed that said stock is now involved in litigation at Panama. Green, however, admits that he is the secretary of the son, Carlos R. Duque, and that Duque was not in this country when the service was made. Green admits that he was at the office, 17 Battery place, New York city, and that the papers were served upon him. Relative to his connection with the defendant, it is admitted that when the said Carlos R. Duque was away from the New York office, it was his custom to direct Green to attend to the matter of taking orders for advertising space in the publications of the defendant corporation and that it was Duque's custom to leave with him a schedule of rates. Green claimed that he had no discretion as to fixing rates, but merely quoted those given him by Duque. He admitted, however, that he received orders for advertising from merchants in New York and vicinity, and that it was his custom to send bills for such advertising to them, and that when remittances were made they were made to the New York office, and in the absence of Duque, that he, Green, remitted the funds, less Duque's commission, to Panama.

It seems to me entirely clear, from the affidavits used upon this motion, that, within the provisions of subdivision 3 of section 432 of the Code of Civil Procedure, Green was a managing agent and a proper person upon whom service of the summons and complaint could be made. . The defendant company was conducting business in the city of New York and, for the purpose of receiving advertising matter for publication in its Panama newspapers, it maintained its said office at 17 Battery place, New York city. For over a year Green had been in sole charge of such business, in the absence of Duque. It had, at least, some property within this State. The process server and the plaintiff's wife made affidavits as to tangible property in the way of stationery and packing cases and sign of the defendant as its place of business, where it was openly conducting the business of receiving advertising in the city of New York — the only business of the defendant in New York. The defendant had contracts with advertisers, which may be said to be property within the provisions of the Code. For at least a year the person served had taken full charge of the defendant's business in the city of New York. He had solicited advertising, rendered bills, quoted rates, received and transmitted to Panama remittances from advertisers in New York city and vicinity. And, dependent upon the credit rating of the advertisers, he had discretion to determine whether or not the advertising should be paid for in advance or after the completion of the publication. From all of these facts it cannot be doubted that the said Green was to all intents and purposes the managing agent of the defendant corporation within the State of New York. In his affidavit in opposition to defendant's motion to set aside the service of the summons and complaint plaintiff states, of his own personal knowledge, that said Carlos R. Duque has been in Panama for over a year, and is there in full charge of the Duque Lottery, an enterprise conducted on a large scale. These allegations stand undenied, Green contenting himself with the mere statement that when Carlos R. Duque is in this country, he (Duque) transacts the defendant's business here, and that he, Green, only acts when his superior is away. With Duque away permanently, running a lottery in Panama, and Green transacting all of the defendant's business here, notwithstand-

ing his disclaimer, no very violent stretch of judicial. interpretation is required to characterize him as a managing agent of the defendant, within the statute. He was the only representative the concern had here, and conducted, so far as it was conducted in this jurisdiction, all of the defendant's business.

His connection with the defendant concern was such as to make it absolutely certain that any papers or process left with him would finally reach and be brought to the attention of the defendant corporation.

Upon this motion to set aside service, no affidavit of any officer of the defendant corporation is presented, the only affidavits used being those of the defendant's said managing agent. This, I deem a circumstance of some importance. The force of Green's denial of agency is weakened by proof of his declarations to the contrary contained in the affidavits in opposition to defendant's motion. (*Perrine* v. *Ransom Gas Machine Co.*, 60 App. Div. 32.)

While the declarations of the agent alone are ordinarily insufficient, as against the principal, to establish such agency, here we have not only the proven declarations of the man Green upon whom service was made, but we have convincing proof and admitted *acts* on his part showing conclusively that he was the only representative of the defendant in this country, and, within the provisions of the Code, its managing agent at the time service was made. (*Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259; *Tuchband* v. *C. & A. R. R. Co.*, 115 id. 437.)

The strong circumstance, it seems to me, showing that the person served was, in fact, the managing agent and a proper person to receive service of process, lies in the fact that the defendant in this action was permanently in business here and maintained at 17 Battery place, New York city, a separate office for the purpose of soliciting business in its behalf; that Green, the person served, was, and for over a year prior to service of said summons had been, in sole and active charge of that office and had transacted and carried on all the business of the defendant in this country at that office, having full authority to contract with advertisers in behalf of the defendant company, to render bills, receive payments, and to remit to the defendant moneys received from advertisers, and

to determine as to whether or not advance payment would be exacted from such advertisers or whether, dependent upon their credit rating, the exaction of payment might be deferred until after the advertising had appeared in defendant's publications. It seems to me a no more complete managing agency could be established than appears in this case, so far as business carried on by the defendant in this country is concerned. To quote the words of DANFORTH, J., in *Tuchband* v. *C. & A. R. R. Co.* (115 N. Y. 437, 440): " * * * and where a corporation created by the laws of any other State does business in this State, the person who, as its agent, does that business should be considered its managing agent, and more especially should that be so where the foreign corporation has an office or place of business in this State, and when that office is in charge of that person and he there acts for the corporation. He is there doing business for it, and so manages its business. Such person is, in every sense of the words used in the statute, ' a managing agent.' "

Whether Green received a salary directly from the defendant, or, as he claims, through Duque, is of little importance, the fact being that he was conducting defendant's business in this country at the time service was made. (*Palmer* v. *Pennsylvania Co.*, 35 Hun, 369; affd., 99 N. Y. 679.)

Surely the reason for the Code provision permitting service upon a managing agent was satisfied upon the facts in this case. No question could reasonably arise as to whether the defendant would ultimately receive notice of the action against it. As was stated by Mr. Justice PRATT in *Palmer* v. *Pennsylvania Co.* (35 Hun, 369; affd., 99 N. Y. 679): " The Code does not specify the extent of the agency required to bind defendants by service of process, except that the person upon whom the service is made must be managing agent. Were the rule to be established as contended by appellants, that the agent must have charge of the whole business of the corporation, the statute would be a dead letter, for such an agency seldom, if ever, exists. Every object of the service is attained when the agent served is of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made. The statute is satisfied if he be a managing agent to any extent."

First Department, April, 1919.     [Vol. 187.

In an action to obtain redress for a wrong or to enforce an obligation for which a defendant may be liable, jurisdiction of the defendant is ordinarily obtained by the service upon him of a summons in the action. The primary object of such service is to apprise the defendant that plaintiff is seeking to enforce his claims through court proceedings, and, being thus advised, defendant is enabled to appear in the action and meet the claim against him. In all reason the service made in the instant case satisfies such requirement. Thereby defendant unquestionably was informed of plaintiff's action, and an opportunity afforded it to appear and defend the action, if so advised. Defendant's position upon this motion is highly technical and without substantial merit.

In *Hiller* v. *B. & M. R. R. R. Co.* (70 N. Y. 223, 227) Judge EARL said: " The object of all service of process is said to be to give notice to the party on whom service is made, that he may be aware of and may resist what is sought of him, and it is a general rule *that any service must be deemed sufficient which renders it reasonably probable that the party proceeded against will be apprised of what is going on against him, and have an opportunity to defend.*"

These authorities state the reasonable rule and justify the Code provision permitting service upon a resident managing agent of a defendant corporation and, I think, fully sustain the contention of the respondent herein.

The defendant's motion to set aside the service of the summons herein was properly denied at Special Term, and the order appealed from should be affirmed, with ten dollars costs and disbursements.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.